UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA M. FORBES,

                Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:14-cv-05780-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On March 2, 2011, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning January 1, 2009. *See* Dkt. 9, Administrative Record ("AR") 15. Both applications were denied upon initial administrative review on August 2, 2011, and on reconsideration on November 29, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on December 7, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational

ORDER - 1

expert. *See* AR 38-81.

In a decision dated January 4, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 15-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 25, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, § 416.1481. On October 7, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on December 23, 2014. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in rejecting the opinions of Brett Copeland, Psy.D., and David Lambert, LICSW; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred as alleged, and thus in determining plaintiff to be not disabled. Accordingly, the Court finds defendant's decision to deny benefits should be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

ORDER - 2

("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.   The ALJ's Evaluation of Dr. Copeland's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

In regard to the opinion evidence from Dr. Copeland, the ALJ found as follows:

> Brett Copeland, Psy.D., performed a psychological evaluation of the claimant on March 10, 2011 (Exhibit 6F/3-9). Dr. Copeland observed that the claimant was tearful during parts of the evaluation and would finger her tissue (Exhibit 6F/4). The claimant had average hygiene and maintained good eye contact and also had average speech (Exhibit 6F/8). On the mental status exam, the claimant demonstrated intact memory, fund of knowledge, abstract thought, and judgment (Exhibit 6F/8). Dr. Copeland found that the claimant had no or only mild impairment in grooming, cooking or shopping, cleaning, transportation, and socialization but she was impaired in money management as she would get help from her grandmother (Exhibit 6F/9). Dr. Copeland found that the claimant had up to moderate limitations in cognitive and social functioning, which was largely related to the claimant's tearfulness during the evaluation (Exhibit 6F/5-6). He opined that the claimant would not "consistently be able to deal with typical stress" which would impair her performance and social functioning (Exhibit 6F/6). Dr. Copeland believed that with services in place, she would be ready for vocational rehabilitation in six months (Exhibit 6F/6). Little weight is given because the claimant's presentation of tearfulness was not typical with other presentations in the remainder of the record. Furthermore, his opinion that the claimant would be unable to deal with typical work stress is inconsistent with the generally moderate limitations that he found. In addition, in his opinion that the claimant would be unable to deal with workplace stress he did not adequately consider the claimant's many activities such as volunteer work, caring for her grandmother and son.

AR 27. Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Dr. Copeland's

ORDER - 5

opinion here. The Court disagrees.

Plaintiff first takes issue with the ALJ's statement that her "presentation of tearfulness was not typical" of other presentations in the record (*id.*), asserting "there are many counseling treatment notes that reveal [her] abnormal presentation during appointments," including a very anxious and depressed mood and affect (Dkt. 11, p. 6). But none of plaintiff's mental health providers noted the presence of symptoms that are commensurate with the level of tearfulness Dr. Copeland observed throughout his evaluation of her. *See* AR 330, 334-35, 352, 362, 384, 414, 438-40, 443, 445-48, 450, 453, 455, 458, 478, 480, 485, 508, 530, 581-82, 676, 853, 858, 940, 947-48. The Court thus finds this to be a valid basis for discounting Dr. Copeland's opinion. *See Batson*, 359 F.3d at 1195 (ALJ need not accept physician's opinion if inadequately supported "by the record as a whole"). Although plaintiff argues she "has never alleged she is consistently incapacitated due to her mental health symptoms" (Dkt. 11, p. 7), the record clearly reveals that the tearfulness she displayed during Dr. Copeland's evaluation was an isolated event.

Plaintiff further argues the rejection of Dr. Copeland's opinion on this basis is not valid, because it dismisses his expertise and presumes he "blindly accepts her presentation and reports." *Id.* The problem for plaintiff, however, is that Dr. Copeland expressly linked her tearful presentation during the course of the evaluation to the functional limitations he assessed. *See* AR 485 (observing "[e]motional instability" as evidenced by her being "[t]earful during many parts of the evaluation," and opining that "[s]he may have problems dealing with typical work stress"), 486 ("Claimant appears to lack the emotional stability to consistently persist on job tasks."), 487 ("Claimant's regular tearfulness during the evaluation suggest [sic] that she will not consistently be able to deal with typical work stress. This will likely impair her work performance and social functioning."). Thus, by pointing out plaintiff did not exhibit such tearfulness during her many

ORDER - 6

other encounters with treatment providers, the ALJ properly found the basis of Dr. Copeland's opinion that her work performance would be impaired to be undermined.[2]

Next, plaintiff argues the ALJ improperly rejected Dr. Copeland's opinion on the basis that "his limitations across the board were not consistent with one another in regard to their severity level," because the "inability to handle typical work stress is a functional limitation that is independent from other functional limitations." Dkt. 11, p. 7. Again, however, the problem for plaintiff is that Dr. Copeland based all of the functional limitations he assessed on her emotional instability as evidenced by her tearfulness during the evaluation, and therefore in that sense those limitations are all linked. *See* AR 485-87. Further, Dr. Copeland himself indicated the specific functional impact of plaintiff's problems dealing with typical work stress was only moderate in severity. *See* AR 485. Plaintiff points out that on the evaluation form Dr. Copeland completed, the term "moderate" is defined as *significant interference* with work-related activities. *See id.* On that same form, though, a "severe" limitation is defined as the *inability* to perform work-related activities (see *id.*), so one presumes Dr. Copeland would have used that term if he felt plaintiff truly was unable to deal with typical work stress.

The Court does agree with plaintiff that the ALJ erred in discounting the opinion of Dr. Copeland on the basis that Dr. Copeland did not adequately consider her activities, as the ALJ fails to show those activities were performed to an extent or at a frequency that necessarily establishes plaintiff is unable to deal with *workplace* stress. *See* AR 48, 73-75, 278-84, 289, 296, 299, 486, 627, 635, 637, 639, 641, 653, 655, 657, 659, 747, 761, 763; *Morgan*, 169 F.3d at 601-

---

[2] Plaintiff also argues the validity of the ALJ's reasoning here is further negated by the fact that testing performed by Dr. Copeland indicated a lack of malingering on her part. *See* AR 487. But the ALJ did not discount Dr. Copeland's opinion on the basis that he relied on plaintiff's self-reporting. Rather, as discussed above, the ALJ properly found the clinical basis for that opinion – i.e., her observed tearfulness – was not consistent with the weight of the medical evidence in the record.

ORDER - 7

02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion). As discussed above, however, the ALJ provided other valid reasons for rejecting Dr. Copeland's opinion, and thus overall did not err is rejecting it.

II.     The ALJ's Evaluation of Mr. Lambert's Opinion

Plaintiff challenges as well the ALJ's following findings concerning the opinion evidence from her mental health counselor:

> The opinion of David Lambert, LICSW, a counselor at [Comprehensive Mental Health], has been considered (Exhibit 22F). Mr. Lambert opined that the claimant would be unable to complete a normal workday or workweek and would generally have marked limitations in work functions (Exhibit 22F/1-2, 5). Little weight is given to Mr. Lambert because he placed too much reliance on the claimant's allegations which, as discussed above, are not entirely credible. Furthermore, Mr. Lambert did not adequately consider the claimant's many activities which are inconsistent with the marked limitations that he found such as caring for her son, mother and grandmother, performing volunteer work, socializing with friends, going grocery shopping, and attending church. In addition, Mr. Lambert's opinion of marked limitations is inconsistent with the opinion[s] of [state agency psychologists Cynthia Collingwood, Ph.D., and Leslie Postovoit, Psy.D].

AR 28. As with Dr. Copeland's opinion, plaintiff argues the ALJ failed to provide valid reasons for rejecting the opinion of Mr. Lambert. Again, the Court disagrees.

Licensed social workers such as Mr. Lambert are "other sources," and their opinions may be given less weight that those of "acceptable medical sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) ("acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists); *see also* 20 C.F.R. § 404.1513(d), § 416.913(d). The testimony of such "other sources" may be discounted if the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

ORDER - 8

Here, the ALJ provided reasons germane to Mr. Lambert.

Plaintiff asserts the ALJ erred in finding Mr. Lambert placed too much reliance on her own allegations, because the ALJ's determination that those allegations are not credible itself is unsound. But as discussed below, the ALJ properly discounted plaintiff's credibility concerning her subjective complaints. Relying on the Ninth Circuit's decision in *Ferrando v. Commissioner of Social Security Admin.*, 449 Fed. Appx. 610 (9th Cir. 2011), plaintiff goes on to assert that "[m]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms," and that "[t]o allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." *Id.* at 612 n.2.

In this case, though, the narrative statement Mr. Lambert provided in support of the functional limitations he assessed appears to be based almost exclusively on plaintiff's self-reporting (*see* AR 1033), and Mr. Lambert's treatment notes are largely devoid of observations or other objective findings that would support the level of severity of those limitations (*see* AR 627-28, 635-42, 653-60, 663-64, 678, 681, 686, 717-18, 741-48, 751-52, 761-66). Further, while the Court does note the Ninth Circuit's concern about giving insufficient consideration to the fact that mental health professionals frequently rely at least in part on what their patients tell them concerning their symptoms, the applicability of *Ferrando* here is suspect. This is because in that case the ALJ's determination that the claimant's treating psychiatrist's report was based on his subjective complaints was "unsupported by the record," and the ALJ "gave no [credible] reason to discredit" the claimant's subjective complaints. 449 Fed. Appx. at 612.

Plaintiff also finds fault with the ALJ's discounting of Mr. Lambert's opinion because of

ORDER - 9

its inconsistency with the opinions of Dr. Collingwood and Dr. Postovoit, asserting this is in and of itself is not a valid basis for rejecting a treating physician's opinion. However, Mr. Lambert is not a treating *physician*, but an "other source" whose opinion may be given less weight than the opinions of "acceptable medical sources" such as Drs. Collingwood and Postovoit. Plaintiff does correctly note that neither psychologist had the opportunity to review the bulk of Mr. Lambert's treatment notes. As discussed above, however, those notes fail to provide objective support for the functional limitations Mr. Lambert assessed, and therefore plaintiff has not shown how the failure to review the notes discredits their opinions. Accordingly, even though the Court agrees with plaintiff that the ALJ improperly relied on her activities to reject Mr. Lambert's opinion – for much the same reasons the ALJ erred in relying thereon to reject the opinion of Dr. Copeland – the ALJ still gave germane reasons for rejecting it.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

ORDER - 10

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ discounted plaintiff's credibility in part because she "was able to work full-time after her alleged onset date" of disability, even though she ultimately "did not continue with those occupations." AR 22. Plaintiff argues this is not a valid basis for finding her to be less than fully credible, because the ALJ found her attempt to work was not successful. But the ALJ never actually made such a determination, finding instead that since her alleged onset date of January 1, 2009, plaintiff "worked administratively for Paragon Services until September of 2009 and appeared to earn well over substantial gainful activities [sic] levels . . . with earnings over $20,000." AR 17. While plaintiff cites her testimony to argue she "was ultimately terminated because the supervisor found her in the basement crying" (Dkt. 11, p. 16), plaintiff actually was referring to a different job she had at an animal hospital in 2010 (*see* AR 49-50). As such, this was a proper basis for discounting her credibility.

The ALJ also properly discounted plaintiff's credibility on the basis that her mental health symptoms improved with treatment. *See* AR 23-25; *Morgan*, 169 F.3d at 599; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Plaintiff argues this is not a valid basis for discounting

ORDER - 11

her credibility, because the severity of her symptoms fluctuates, and thus it would not be unlikely that she would have periods of improvement. Mental health treatment notes, however, overall do support the ALJ's determination that plaintiff's symptoms tended to improve. *See* AR 323, 341, 352, 439, 446, 478, 480, 508, 581, 641, 655, 657, 659, 663, 678, 717, 727, 730, 741, 745, 747, 751, 763, 765. Plaintiff also points to the several areas of marked functional limitation assessed by Mr. Lambert as evidence that she has not significantly improved, but as discussed above the ALJ properly rejected that assessment.

The ALJ further discounted plaintiff's credibility because while she "testified to having difficulty with people," the record showed that she "was still able to interact appropriately with others," and that "her work history tend[ed] to show that she had people oriented jobs and she was able to get a veterinary assistant certification during the relevant period." AR 25-26. While it is not entirely clear the extent to which plaintiff had to interact with others in order to obtain her certification – and thus the Court finds this is not a sufficient basis for discounting her credibility – the substantial evidence, including plaintiff's reports to treatment providers, supports the ALJ's other stated reasons for discounting plaintiff's testimony. For example, plaintiff reported going to social events and going on dates, as well as being able to talk with store clerks. *See* AR 627, 635, 637, 641, 655.

The Court agrees with plaintiff that the hearing transcript fails to support the ALJ's claim that her initial testimony that she had never been convicted of a crime or spent time in jail but then testified that she had spent six days in jail for a forgery conviction, shows a "lack of candor" concerning her criminal history. AR 26. A more reasonable reading of that testimony, however, indicates plaintiff was not intentionally trying to deceive the ALJ, but rather attempted to explain a fairly complicated situation where she was convicted and did receive six days of jail time, but

was told if she successfully completed probation she "would be adjudicated not guilty" and the conviction would be removed from her record, and as far as she understands it that is what has happened. *See* AR 44-45. The Court also agrees with plaintiff that since her conviction occurred some 13 years before her alleged onset date – and 15 years prior to the hearing – and there is no evidence of further criminal activity that would bear adversely on her reputation for honesty, the fact that her conviction involved a crime of dishonesty is at best a questionable basis for finding her to be less than fully credible in this case.[3]

Nevertheless, while the ALJ did err in relying on plaintiff's criminal history to discount her credibility, and while the Court agrees as well with plaintiff that the evidence of her activities in the record does not clearly show she engaged in chores or other tasks at a frequency or to an extent that necessarily are transferrable to a work setting or otherwise contradicts her testimony (*see Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 and n.7), the fact that one or more of the reasons for discounting plaintiff's credibility were improper does not render the overall credibility determination invalid, given that the ALJ provided other legitimate reasons for finding plaintiff less than fully credible. *See Tonapetyan*, 242 F.3d at 1148. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"). Accordingly, the Court declines to find any reversible error here.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a

---

[3] It should also be noted that the reason plaintiff gave for committing the crime was that she was pregnant and not working at the time, was about to be evicted and have her car repossessed, and therefore was "desperate" and "just made a really stupid mistake." AR 45.

ORDER - 13

claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . to perform light work . . . She can occasionally crawl but can never climb ladders, ropes, or scaffolds. She can frequently reach overhead. The claimant is limited to unskilled work with simple repetitive tasks. She can have occasional superficial interaction with coworkers, supervisors, and the general public. She would be off-task up to 10% of the workday.**

AR 20 (emphasis in original). Plaintiff argues this RFC assessment is not supported by the substantial evidence in the record. But because as discussed above the ALJ did not err in

ORDER - 14

evaluating the opinion evidence in the record or in discounting plaintiff's credibility concerning her subjective complaints, the Court finds that assessment to be without error.

V.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 78-79. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id.* Based on the vocational expert's testimony, the ALJ found plaintiff would be capable of performing other jobs existing in

ORDER - 15

significant numbers in the national economy. *See* AR 29-30. Again, while plaintiff argues the ALJ's step five determination cannot be upheld in light of the above alleged errors, as discussed previously plaintiff has failed to establish any such error. Accordingly, the Court also declines to find error at this step as well.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 15th day of June, 2015.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge